# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| NOVARTIS PHARMACEUTICALS CORPORATION, | ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| vs. | ) ) | Civil Action No. 2:24-cv-04131-MDH |
| ANDREW BAILEY, in his official capacity as ATTORNEY GENERAL OF THE STATE OF MISSOURI, | ) ) ) ) | |
| *and* | ) ) | |
| JAMES L. GRAY, in his official capacity as PRESIDENT OF THE MISSOURI BOARD OF PHARMACY, CHRISTIAN S. TADRUS, in his official capacity, as VICE PRESIDENT OF THE MISSOURI BOARD OF PHARMACY, and DOUGLAS R. LANG, COLBY GROVE, ANITA K. PARRAN, TAMMY THOMPSON, and DARREN HARRIS, in their official capacities as MEMBERS OF THE MISSOURI BOARD OF PHARMACY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

## MOTION TO INTERVENE AND SUGGESTIONS IN SUPPORT OF MISSOURI HOSPITAL ASSOCIATION AND MISSOURI PRIMARY CARE ASSOCIATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iv

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 3

I.      The Section 340 B Program ................................................................................ 3

II.     Proposed Intervenors ......................................................................................... 4

        a.     Missouri Hospital Association ..................................................................... 4

        b.     Missouri Primary Care Association ............................................................. 6

III.    Procedural History ............................................................................................. 7

ARGUMENT ........................................................................................................... 8

I.      Proposed Intervenors' Have Standing .................................................................. 8

        a.     Article III standing ....................................................................................... 8

        b.     Associational standing ................................................................................. 9

II.     Proposed Intervenors Should be Permitted to Intervene as a Matter of Right ..... 10

        a.     Proposed Intervenors' Motion to Intervene is timely ............................... 11

        b.     Proposed Intervenors have a legitimate interest in the lawsuit ................ 11

        c.     Proposed Intervenors are so situated that disposing of the lawsuit without
               Proposed Intervenors would impair or impede its ability to protect its
               interests ..................................................................................................... 12

        d.     Proposed Intervenors are not adequately represented by the existing
               parties ....................................................................................................... 12

III.    Alternatively, Proposed Intervenors Should be Permitted to Intervene in the Lawsuit by Permissive Intervention ..................................................................... 13

IV.    Positions of the Parties ........................................................................................... 14

CONCLUSION ................................................................................................................... 15

HB: 4886-8332-3864.2

# TABLE OF AUTHORITIES

## Cases

*AbbVie Inc. v. Murrill*, 6:23-CV-01307 (W.D. La. Mar. 7, 2024)....................................2

*AstraZeneca Pharmaceuticals LP v. Landry*, 6:23-CV-01042
    (W.D. La. Nov. 9, 2023) ........................................................................2

*AstraZeneca Pharmaceuticals LP v. McClain*, 4:24-CV-00268
    (E.D. Ark. Aug. 13, 2024) .................................................................2

*Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304
    (8th Cir. 1995) ....................................................................................12

*Liddell v. Special Admin. Bd. of the Transitional Sch. Dist. of the Dist. of the
    City of St. Louis*, 894 F.3d 959 (8th Cir. 2018) ......................................8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..........................................8

*Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994
    (8th Cir. 1993) ..............................................................................11, 12

*Nosker v. Gill Bros. Trucking*, 2006 WL 1798089, at *5 (W.D. Mo. June 28, 2006)....13

*Pharmaceutical Research & Manufacturers of America v. Landry*,
    6:23-CV-00997 (W.D. La. Nov. 8, 2023) ...............................................2

*Pharmaceutical Research and Manufacturers of America v. McClain*,
    4:21-CV-00864 (E.D. Ark. May 3, 2022).............................................2, 3

*Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard College*,
    600 U.S. 181 (2023) ............................................................................9

*United States v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995)....................................11

*Worth v. Jacobson*, 108 F.4th 677, 685–86 (8th Cir. 2024).............................................9

HB: 4886-8332-3864.2

## Rules

Federal Rules of Civil Procedure 24(a)(2) ...........................................................1, 10, 12

Federal Rules Civil Procedure 24(b).............................................................................13

Federal Rules of Civil Procedure Rule 24(b)(1) ............................................................13

Federal Rules of Civil Procedure Rule 24(b)(1)(B).........................................................1

## Regulations

42 U.S.C. § 256b(a)(1) ...................................................................................................3

42 U.S.C. § 1396r-8(a)(1) ..............................................................................................3

## Other

Congressional Research Service, *Litigation Continues Over Use of Contract Pharmacies in 3430B Drug Discount Program* (May 23, 2024).......................3, 4

Food, Drug, and Cosmetic Act and the Drug Price Competition and Patent Term Restoration Act..........................................................................................................7

Health Resources & Services Administration, *340B Drug Pricing Program* (last visited Aug. 18, 2024).........................................................................................................4

HB: 4886-8332-3864.2

# INTRODUCTION

Proposed Intervenors Missouri Hospital Association ("MHA") and Missouri Coalition for Primary Care d/b/a Missouri Primary Care Association ("MPCA") (collectively, "Proposed Intervenors") move this Court, under Rule 24(a)(2) and 24(b)(1)(B) of the Federal Rules of Civil Procedure, for leave to intervene so they can defend Missouri Senate Bill 751 ("SB 751") in this action brought by Plaintiff Novartis Pharmaceuticals Corporation ("Novartis"). SB 751 amends chapter 376 of the Revised Statutes of Missouri to protect the acquisition or delivery of 340B drugs to pharmacies that are under contract with a covered entity to receive and dispense 340B drugs on behalf of the covered entity, commonly referred to as "contract pharmacies." SB 751 protects hospitals and their patients from drug manufacturers' restrictions on the number of contract pharmacies a hospital or federally qualified health center ("FQHC") can use. Novartis seeks a declaration that SB 751 is preempted by federal law and violates the dormant Commerce Clause. (ECF No. 1 at 36-37).

Proposed Intervenors represent the interests of the hospitals and FQHCs that have been harmed by drug manufacturers' restrictions on contract pharmacies and would benefit from the protections afforded to them under SB 751. Members of MHA and MPCA participate in the 340B Program and rely on these pharmacies to meet the needs of their patients and communities. Proposed Intervenors are entitled to intervene as a matter of right because they and their members have been injured by the limitations placed on contract pharmacies by drug manufacturers and have a significant interest in the viability of SB 751 that could be impaired by the disposition of this action. The

existing Defendants will not adequately represent the Proposed Intervenors' distinct interests, which pertain to the economic dangers Proposed Intervenors' members may face, as well as their missions in providing quality, affordable healthcare that is accessible to all Missourians. Alternatively, the Court should grant permissive intervention because Proposed Intervenors share common questions of fact and law with the action, and there will be no undue delay or prejudice to the adjudication of the original parties' rights.

In other actions wherein drug manufacturers, like Novartis, challenged state laws that protect the delivery of 340B drugs to contract pharmacies, district courts across the country have granted intervention motions filed by parties similar to Proposed Intervenors. *See e.g., Pharmaceutical Research and Manufacturers of America v. McClain*, 4:21-CV-00864, ECF No. 22, Order Granting Motion to Intervene (E.D. Ark. May 3, 2022); *AstraZeneca Pharmaceuticals LP v. McClain*, 4:24-CV-00268, ECF No. 50, Order Granting Motion to Intervene (E.D. Ark. Aug. 13, 2024); *Pharmaceutical Research & Manufacturers of America v. Landry*, 6:23-CV-00997, ECF No. 26, Order Granting Motion to Intervene (W.D. La. Nov. 8, 2023); *AstraZeneca Pharmaceuticals LP v. Landry*, 6:23-CV-01042, ECF No. 29, Order Granting Motion to Intervene (W.D. La. Nov. 9, 2023); *AbbVie Inc. v. Murrill*, 6:23-CV-01307, ECF No. 58, Ruling Granting Motion to Intervene (W.D. La. Mar. 7, 2024). The Court should do the same here.

# BACKGROUND

## I.     The Section 340B Program

The Section 340B Program is a drug pricing program established by Congress in 1992 to protect safety-net providers, including hospitals and FQHCs, from escalating drug costs. *See* 42 U.S.C. § 256b(a)(1), 42 U.S.C. § 1396r-8(a)(1). It requires drug manufacturers to offer discounts on covered outpatient drugs to statutorily defined safety-net providers as a condition of the manufacturers' drugs being reimbursed by Medicaid and Medicare Part B. The program was later expanded to allow critical access hospitals to participate. In *Pharm. Rsch. & Manufacturers of Am. v. McClain*, 95 F.4th 1136, 1139 (8th Cir. 2024), the Eighth Circuit described the program in the following manner:

> Section 340B incentivizes pharmaceutical manufacturers to provide qualified health care providers, referred to as 'covered entities,' with pricing discounts on certain drugs prescribed to individuals and families whose incomes fall below the federal poverty level. Since the beginning, covered entities have contracted with outside pharmacies, referred to as "contract pharmacies," for the distribution and dispensation of 340B drugs. This is in large part due to the fact that building or maintaining a pharmacy is cost-prohibitive for many covered entities. Additionally, the outsourcing of pharmacy services has allowed for drug dispensation closer to where low-income patients reside.

According to the Congressional Research Service, "the majority of covered entities contract with retail pharmacies, known as contract pharmacies, who then sell drugs to patients" rather than distribute drugs through in-house pharmacies.[1] "The 340B Program enables covered entities to stretch scarce federal resources as

---

[1] Congressional Research Service, *Litigation Continues Over Use of Contract Pharmacies in 3430B Drug Discount Program* (May 23, 2024), https://crsreports.congress.gov/product/pdf/LSB/LSB11163.

far as possible, reaching more eligible patients and providing more comprehensive services." [2] Because of the 340B program, providers are able to save funds that are used to provide necessary services to their communities. In 2020, drug manufacturers began to restrict covered entities from using contract pharmacies to distribute 340B drugs. For example, at least as of September 2023, Novartis refused 340B pricing for drugs shipped to contract pharmacies more than 40 miles away from hospitals' parent sites.[3] The restrictions "generally aim to limit covered entities to distribution to one contract pharmacy" and have financial consequences for entities who will have less access to 340B drugs and therefore are unable to generate 340B savings from them.[4]

## II.      Proposed Intervenors

### a.      Missouri Hospital Association

MHA is a private, non-for-profit member organization whose mission is to shape an environment that enables member hospitals and healthcare systems to meet their evolving missions so that they may improve the health of their patients and community. MHA has 139 member hospitals. MHA represents every acute care hospital in the state, as well as most of the federal and state hospitals and specialty hospitals, including

---

[2] Health Resources & Services Administration, *340B Drug Pricing Program*, https://www.hrsa.gov/opa#:~:text=The%20340B%20Program%20enables%20covered,and%20providing%20more%20comprehensive%20services. (last visited Aug. 18, 2024).

[3] https://www.nachc.org/wp-content/uploads/2023/09/340B-restrictions-summary-chart.pdf (last visited Aug. 18, 2024).

[4] Congressional Research Service, *Litigation Continues Over Use of Contract Pharmacies in 3430B Drug Discount Program* (May 23, 2024) https://crsreports.congress.gov/product/pdf/LSB/LSB11163.

HB: 4886-8332-3864.2

rehabilitation and psychiatric facilities. MHA advocates for policies that improve health and health care, provides representation and advocacy on behalf of its members, and seeks to educate its members, the public and the media, and legislative representatives about health care issues.

Approximately half of MHA's members are "covered entities" in the 340B program. The 340B program was intended to provide financial relief to hospitals, clinics and other eligible participating organizations that serve large numbers of uninsured and low-income patients. The savings provided through the 340B program subsidize patient care, including labor and delivery, pharmacy access and community-based services offered by hospitals and other providers. A majority of MHA's 340B members rely on contract pharmacies to order, receive, and dispense medications for their patients, and MHA estimates that as much as 20% of the 340B benefit may be derived through contract pharmacies. Reducing access to those savings means hospitals are unable to underwrite critical but under-reimbursed services lines. The loss of 340B savings because of contract pharmacy restrictions further threatens the financial viability of MHA's members. Even with the benefits of the 340B program, eligible Missouri hospitals realize very thin margins, averaging 0.8% in 2022. Without 340B savings, many small and rural hospitals would operate at a loss. For some, the 340B savings prevents the hospital from closing. MHA's members have already been damaged by drug manufacturers' limitations on contract pharmacies by experiencing significant reductions in 340B savings over the past four years, and now stand to benefit from SB 751's protections.

HB: 4886-8332-3864.2

The ultimate issue in this case is whether SB 751 will protect covered entities from manufacturers who demand that the covered entity contracts with only one pharmacy. Novartis and other manufacturers have issued directives that only one contract pharmacy per covered entity be permitted. The manufacturers enforce these directives by refusing to provide 240B drugs to multiple pharmacies. SB 751 permits multiple contract pharmacies per covered entity. This is critical for rural hospitals, particularly because they serve patients within as much as a 75-mile radius. SB 751 preserves the right of patients to obtain needed pharmaceuticals near their homes.

### b. Missouri Primary Care Association

MPCA was founded in 1984 and is a private, not-for-profit member organization. Its mission is to be Missouri's leader in shaping policies and programs that improve access to high-quality, community-based, and affordable primary health services. MPCA is the recognized voice of Missouri's community health centers (or FQHCs), which are local, non-profit, community-driven health care providers that serve low income and medically under-served communities. MPCA's members provide affordable primary care and preventative services, and often provide on-site dental, pharmaceutical, mental health, and substance use disorder services. MPCA partners closely with its community health centers; federal, state, and local governments; and private organizations to support resources, programs, and policies that assure access to health care. All of MPCA's members are "covered entities" in the 340B program. A majority of MPCA's members rely on contract pharmacies to fill prescriptions for their patients.

By law, FQHCs are required to invest every penny of 340B savings into activities that expand access for their patients. MPCA's members abide that promise by using 340B savings to expand non-revenue generating services like clinical pharmacy programs, community health workers, specialty care services, and extended hours of operation to better meet patient needs. MPCA's members rely on contract pharmacies to expand access for patients and contract pharmacies serve as an extension of the health center. Some of MPCA's members lack the financial resources to open an in-house pharmacy and must utilize contract pharmacies to order, receive, and dispense medications their patients need. Without 340B savings and the ability to utilize contract pharmacies, MPCA members' ability to provide critical resources, health care, and discounted prescription drugs is in danger. MPCA's members have already been damaged by drug manufacturers' limitations on contract pharmacies, and stand to benefit from SB 751's protections.

Plaintiff Novartis does not currently prohibit the FQHC from using multiple contract pharmacies. But other pharmaceutical manufacturers do impose that restriction. Accordingly, MPCA and its members will be harmed if the Plaintiff proceeds in this lawsuit by striking down Senate Bill 751, because any such order would not apply just to Novartis.

### III.        Procedural History

On August 2, 2024, Novartis filed the Complaint against Defendants. (ECF No. 1). In its Complaint, Novartis alleges that SB 751 is unconstitutional because (1) it is preempted by the Food, Drug, and Cosmetic Act and the Drug Price Competition and

HB: 4886-8332-3864.2

Patent Term Restoration Act under field and conflict preemption theories; (2) it is preempted by federal law governing the 340B program; and (3) it violates the dormant Commerce Clause because it "fuel[s] an economically protectionist regime." (ECF No. 1 ¶¶ 11-13). Novartis claims that, absent judicial intervention enjoining S.B. 781, Novartis will suffer irreparable harm once the law goes into effect on August 28, 2024. On August 2, 2024, Novartis filed a Motion for Preliminary Injunction, and on August 8, 2024, Novartis filed Suggestions in Support of its Motion for Preliminary Injunction. The Defendants' Suggestions in Opposition of Novartis's Motion for Preliminary Injunction are not due until August 23, 2024.

## ARGUMENT

**I.      Proposed Intervenors' Have Standing.**

   **a.      Article III standing.**

   The Eighth Circuit has held that an intervenor must establish Article III standing and may establish standing based on well-pleaded allegations. *See Liddell v. Special Admin. Bd. of the Transitional Sch. Dist. of the Dist. of the City of St. Louis*, 894 F.3d 959, 964-65 (8th Cir. 2018). To have Article III standing, a party must show an injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Drug manufacturers, such as Novartis, have impaired members of Proposed Intervenors' use of contract pharmacies, thus depriving their patients of access to medications covered under the 340B program and all savings and revenue their members use to provide critical services to their communities. Without access to 340B drugs and

HB: 4886-8332-3864.2

the attendant savings—access that SB 751 would protect—Proposed Intervenors' continued ability to provide critical services and medications are in danger.

Novartis's attack on SB 751 threatens the contract pharmacy protections that are essential to the continued viability of the operations and services provided by Proposed Intervenors' members. Members of Proposed Intervenors have experienced financial harm due to drug manufacturers' actions regarding contract pharmacies and will experience additional economic harm if SB 751's protections are upended, in addition to the further erosion of their ability to provide quality health care to Missourians. The manufacturers' actions regarding contract pharmacies are "fairly traceable" to the harms Proposed Intervenors' members have already suffered and will suffer if SB 751 is ruled unconstitutional. Finally, the harms imposed by Novartis and drug manufacturers are redressable by this Court because a favorable decision would allow SB 751 to stand, which would prohibit drug manufacturers from restricting distribution of 340B program drugs to contract pharmacies.

### b. Associational standing.

To have associational standing, an organization must show: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Worth v. Jacobson*, 108 F.4th 677, 685–86 (8th Cir. 2024) (quoting *Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard College*, 600 U.S. 181, 199 (2023)). Both Proposed Intervenors meet these requirements. MHA's members who participate in

the 340B program and who use contract pharmacies would meet standing requirements above, as would all of MPCA's members.

MHA's mission is to shape an environment that enables member hospitals and healthcare systems to fulfill their current and future missions – which improve the health of their patients and community. The use of contract pharmacies, and the savings attained by MHA's members in so doing, allows MHA's members to improve the health of their patients and community. MPCA's mission is to shape policies and programs that improve access to high-quality, community-based, and affordable primary health services. All of its members serve low income and medically underserved communities. Without the ability to utilize contract pharmacies, the ability of MPCA's members to continue providing high-quality and affordable primary health services and medication is in jeopardy. Proposed Intervenors' intervention in this action does not require the participation of individual members in the lawsuit.

## II. Proposed Intervenors Should be Permitted to Intervene as a Matter of Right.

Rule 24(a)(2) allows a party to timely intervene as a matter of right if: (1) the motion is timely; (2) the intervenor "claims an interest relating to the property or transaction that is the subject of the action"; (3) disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) the existing parties do not "adequately represent" the interest. Fed. R. Civ. P. 24(a)(2).

### a. Proposed Intervenors' Motion to Intervene is timely.

"In determining timeliness, factors that bear particular consideration are the reason for the proposed intervenor's delay in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 998 (8th Cir. 1993). This action has only recently commenced, with Novartis filing its Complaint and Motion for Preliminary Injunction on August 2, 2024 and Suggestions in Support of its Motion for Preliminary Injunction on August 8, 2024. No delay or prejudice will occur to Novartis if the Court grants this motion.

### b. Proposed Intervenors have a legitimate interest in the lawsuit.

The applicant for intervention must have an interest in the subject matter of the litigation, *i.e.*, an interest that is "direct," as opposed to tangential or collateral. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995). Furthermore, that interest must be "recognized," i.e., both "substantial" and "legally protectable." *Id.* Proposed Intervenors' members participate in the 340B program and either do not have in-house pharmacies so must use contract pharmacies or choose to use contract pharmacies to ensure their patients are able to continue receiving medication at discounted prices. The savings that Proposed Intervenors' members realize due to the 340B program allow them to provide services to their patients and communities they would otherwise not be able to provide. Novartis is challenging SB 751, which protects these members' use of contract

HB: 4886-8332-3864.2

pharmacies and ability to provide critical services to their patients and communities. Proposed Intervenors' interests in this action are legitimate.

      **c.**      **Proposed Intervenors are so situated that disposing of the lawsuit without Proposed Intervenors would impair or impede its ability to protect its interests.**

SB 751 protects the members of Proposed Intervenors' members ability to use contract pharmacies to provide affordable medications to their patients. Novartis is asking this Court to invalidate SB 751which would prevent critical access to affordable medications to Proposed Intervenors' members' patients and will reduce critical services using savings and reserves with which the 340B program assists. Rule 24(a)(2) requires only that disposition of the action "may as a practical matter impair or impede the applicant's ability to protect [its] interest." *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995). Without SB 751's protections for the continued ability to order, receive, and dispense 340B medications through contract pharmacies, Proposed Intervenors' members are in danger of not being able to meet the needs of their patients or the communities in which they serve.

      **d.**      **Proposed Intervenors are not adequately represented by the existing parties.**

Finally, Proposed Intervenors' interests are not adequately represented by the existing parties in the lawsuit. "Typically, persons seeking intervention need only carry a 'minimal' burden of showing that their interests are inadequately represented by the existing parties." *Mille Lacs*, 989 F.2d at 999. Proposed Intervenors' interests are not

HB: 4886-8332-3864.2

aligned with Novartis. And while Defendants have a general interest in protecting the constitutionality of duly enacted state laws, the Proposed Intervenors have specific economic and mission-based interests in the viability of SB 751. MHA and MPCA's members are the entities that have been affected by the 340B program and drug manufacturers' actions to block shipment of 340B medications to contract pharmacies of covered entities, they are who would be the benefactors of SB 751's protections of contract pharmacies, and they are the entities providing care to low income and medically under-served Missourians. As such, their interests are different than Defendants' and will not be adequately protected by the existing parties.

### III.     Alternatively, Proposed Intervenors Should be Permitted to Intervene in the Lawsuit by Permissive Intervention.

While Proposed Intervenors believe they should be permitted to intervene in this matter as of right, in the alternative, Proposed Intervenors should be allowed to intervene pursuant to Federal Rules of Civil Procedure Rule 24(b)(1).  Under Rule 24(b) of the Federal Rules of Civil Procedure, upon timely motion, the Court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).  "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Nosker v. Gill Bros. Trucking*, 2006 WL 1798089, at *5 (W.D. Mo. June 28, 2006).  Here, the motion is timely, and there will be no undue delay or prejudice to any of the parties for the reasons set forth above in Section II(a). Proposed Intervenors will abide by the deadlines already set by the Court. Proposed

HB: 4886-8332-3864.2

Intervenors also anticipate that they will share common questions of law and fact with Defendants regarding the claims that Plaintiff raises in the Complaint regarding the constitutionality of SB 751.

## IV.     Positions of the Parties

The Defendants have stated to undersigned counsel that they neither consent to nor oppose this Motion.  As of the time of filing, the Plaintiff has not communicated its position.

HB: 4886-8332-3864.2

## CONCLUSION

For the reasons set forth herein, Proposed Intervenors Missouri Hospital Association and Missouri Primary Care Association pray that this Court grant them leave to intervene in this action as a matter of right, or, in the alternative, permit it to intervene, file its Motion to Dismiss, submit Suggestions in Opposition to Plaintiff's Motion for Preliminary Injunction, and grant any further relief the Court deems just and proper.

HB: 4886-8332-3864.2

Dated August 20, 2024          Respectfully submitted,

HUSCH BLACKWELL LLP


By:   /s/ Lowell D. Pearson
       LOWELL D. PEARSON    #46217
       ALEXA B. BARTON              #71779
       630 Bolivar Street
       Suite 300
       Jefferson City, Missouri  65101
       Phone: 573-635-9118
       Fax:    573-634-7854
        Email: lowell.pearson@huschblackwell.com
               allee.barton@huschblackwell.com

By:   /s/ Bryan Wade
       BRYAN WADE              #41939
       3810 E. Sunshine Street
       Suite 300
       Springfield, Missouri  65809
       Phone:  417-268-4000
       Fax:     417-268-4040
       Email:  bryan.wade@huschblackwell.com

       ATTORNEYS FOR INTERVENORS
       MISSOURI HOSPITAL ASSOCIATION AND
       MISSOURI PRIMARY CARE ASSOCIATION

       POWERS PYLES SUTTER & VERVILLE, PC

By:   /s/ Ronald S. Connelly
       RONALD S. CONNELLY*
       1250 Connecticut Ave., NW
       Eighth Floor
       Washington, DC 20036
       Phone:  202-872-6762
       Fax:     202-466-6550
       Email:  Ron.Connelly@PowersLaw.com

       *Applying Pro Hac Vice

ATTORNEYS FOR INTERVENOR
MISSOURI HOSPITAL ASSOCIATION AND
MISSOURI PRIMARY CARE ASSOCIATION

HB: 4886-8332-3864.2

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send a notice of electronic fling to all persons registered for ECF as of this date.

_/s/ Lowell D. Pearson_

HB: 4886-8332-3864.2

STATE OF MISSOURI )
)
COUNTY OF COLE )

I, Jon Doolittle, President and CEO of the Missouri Hospital Association, having been duly sworn, attest that the statements in this Motion and Suggestions are true and accurate to the best of my knowledge.

_____
Jon Doolittle

Subscribed and sworn to before me this 20th day of August, 2024.

_____
Notary Public

My Commission Expires: March 10, 2028

> TAMMY L. SIEBERT
> Notary Public - Notary Seal
> State of Missouri
> Commissioned for Cole County
> My Commission Expires: March 10, 2028
> Commission Number: 12382833

18

HB: 4886-8332-3864.2

STATE OF MISSOURI    )
                        )
COUNTY OF COLE    )

     I, Joe Pierle, Chief Executive Officer of the Missouri Primary Care Association, having been duly sworn, attest that the statements in this Motion and Suggestions are true and accurate to the best of my knowledge.

                                                 _____
                                                  Joe Pierle

     Subscribed and sworn to before me this 20 day of August, 2024.

                                                 _____
                                                  Notary Public

My Commission Expires: \_\_01 - 27 - 2027\_\_

TENA MARIE MCDONALD
Notary Public, Notary Seal
State of Missouri
Moniteau County
Commission # 19648264
My Commission Expires 01-27-2027

19